UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:13-cv-00104-JHM

CINDY BUMPUS and DAVID BUMPUS                                                        PLAINTIFF

V.

CARHARTT, INC.                                                                                          DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DN 23]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's Motion is **DENIED**.

### I. BACKGROUND

On May 31, 2013, Plaintiffs Cindy Bumpus and David Bumpus filed suit against Defendant Carhartt for negligence in Hopkins County Circuit Court. (Pl.'s Compl. [DN 1-2] at 4.) On August 29, 2013, Defendant filed a Notice of Removal and successfully removed the action to this Court based on diversity jurisdiction without challenge from Plaintiffs. (Id.)

Plaintiff Cindy Bumpus is, and was for all times relevant herein, an employee of the United States Postal Service (hereinafter "USPS"). (Def.'s Mem. Supp. Mtn. Summ. J. [DN 23-1] at 2.) She works as a rural mail carrier and mainly delivers mail to homes within her local area. (Id.) She makes these deliveries in a standard USPS box truck called an "LLV," in which the steering wheel is located on the right hand side, opposite of most standard vehicles. (Id.)

On June 8, 2012, Plaintiff made a mail delivery to Defendant's facility for the first time. (Id.) In fact, this was the first time that she had ever made a delivery to a loading dock. (Id. at 4.) She had not previously been trained in an LLV truck by the USPS on how to back the truck up a ramp or how the truck should be positioned on a ramp. (Id.) Regardless, she pulled up to

the Defendant's intercom and was instructed by one of Defendant's employees to drive down to Ramp #33, just past the main office. (Id. at 2; Pl.'s Dep. [DN 23-2] at 25.) So, she proceeded to drive to Ramp #33 and back her truck up that ramp. (Pl.'s Dep. [DN 23-2] at 26.) There were no obstacles on the ramp and she had no trouble backing up the truck. (Id. at 28.) She did not notice anything to her right as she was backing up the ramp, but to the left, she noticed another ramp that was separated from Ramp #33 with a railing. (Id.) Plaintiff noticed that she was very close to the edge of the ramp on the right side, the driver's side, but had left more room on the left side, the passenger side, of the LLV. (Id. at 30).

After parking on the ramp, Plaintiff exited the LLV on the driver's side, and planted her feet on the concrete. (Def.'s Mem. Supp. Mtn. Summ. J. [DN 23-1] at 2.) She observed no obstructions on the ramp at that time, but did notice a concrete ledge or lip, raised what she thought to be about four or five inches, along the edge of the ramp on the driver's side directly next to where she was standing. (Id.) Plaintiff confirmed that this ledge was painted yellow. (Pl.'s Dep. [DN 23-2] at 47.) Once Plaintiff had exited the vehicle and observed her surroundings, she began to walk up the ramp between the ledge and the driver's side of the LLV, placing one foot in front of the other. (Def.'s Mem. Supp. Mtn. Summ. J. [DN 23-1] at 3.) She then arrived at the top of Ramp #33, but realized that she had forgotten her mail scanner, so she proceeded down the ramp once more on the driver's side between the truck and the ledge, placing one foot in front of the other. (Id.) Plaintiff retrieved the scanner from the driver's side of the truck, and began to walk up the ramp for a second time in the same manner as before—placing one foot in front of the other and walking between the ledge and the vehicle. (Id.)

While walking up Ramp #33 for the second time, Plaintiff lost her balance, tripped over the ledge on the driver's side, and fell off the ramp. (Id.) She specifically stated that she did not

2

bump into the truck, she did not catch her toe or foot on the ramp or its ledge, and did not trip or slip on any obstruction or substance. (Id.) Instead, she simply lost her balance while walking. (Id.) When Plaintiff fell over the edge of the ramp, she fell on her left side. (Id. at 4.) She attempted to catch herself by extending her left hand, thus injuring her left wrist as a result of the fall. (Pl.'s Dep. [DN 23-2] at 42.) Plaintiff suffered serious injuries as a result of the fall; she broke her wrist requiring wrist surgery. (Pl.'s Resp. [DN 26] at 2.) She was unable to work for two and a half months and still receives ongoing medical treatment for her injuries. (Id.) Additionally, Plaintiff David Bumpus alleges that, as a result of Defendant's negligence, he lost the companionship, society, and services of his wife. (Def.'s Mem. Supp. Mtn. Summ. J. [DN 23-1] at 5.)

Throughout the course of discovery, Plaintiffs named Cindy Bumpus' treating physician, Dr. James Dooley, as their expert on damages. (Id.) Defendant named Herb Goff, P.E., P.G., C.F.E.I, as its expert on causation, and Goff inspected Defendant's facility and Ramp #33. (Id. at 5–6.) Goff reviewed the site and determined that the ledge on the left side of the ramp, Plaintiff's driver's side, is approximately eight inches wide and eight inches tall, is painted yellow, and is similar to a curb on a normal street. (Id.) Additionally, he found that Ramp #33 is approximately thirty-two inches above the ground at its tallest point. (Id.) In his report, Goff further stated that the 1997 Kentucky Building Code (hereinafter "KBC") does not apply to Ramp #33, as its maximum height of thirty-two inches does not require protection devices under the KBC or the Occupational Safety and Health Administration (hereinafter "OSHA") Regulations, and that the ramp was well-maintained and displayed no evidence of an unsafe condition. (Id.) Plaintiffs later filed their Supplemental Expert Disclosures, but again did not name any expert on causation. (Id.) Based on the record, Defendant now moves for summary

judgment under Fed. R. Civ. P. 56(a), stating no material facts are at issue and that it is entitled to judgment as a matter of law because Plaintiff has produced no evidence that Defendant breached its duty of care that could allow a reasonable juror to find in favor of Plaintiff.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

4

### III. DISCUSSION

Plaintiffs argue that Ramp #33 was a dangerous condition to Plaintiff Cindy Bumpus. Plaintiffs assert that Defendant breached its duty of care to keep the premises reasonably safe and to discover any dangerous conditions and either eliminate them or warn her of them. Therefore, Plaintiffs argue that the Court must deny Defendant's Motion for Summary Judgment because questions of material facts remain regarding the foreseeability of the danger and Defendant's breach of duty. The Court agrees.

Under Kentucky law, a "negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." Wright v. House of Imports, Inc., 381 S.W.3d 209, 213 (Ky. 2012). Therefore, the Court will address the standard elements of negligence in turn.

Naturally, the first step in the analysis is to determine the duty owed to the injured party. "First and foremost, a land possessor is subject to the general duty of reasonable care," meaning a "possessor[] of land [is] required to maintain the premises in a reasonably safe condition." Shelton v. Kentucky Easter Seals Society, Inc., 413 S.W.3d 901, 908. Under Kentucky law, the duty is dependent upon the "status of the injured party as an invitee, licensee, or trespasser." Id. at 909. Generally, an invitee is one who "enters upon the premises at the express or implied invitation of the owner or occupant on behalf of mutual interest to them both, or in connection with the business of the owner or occupant." Scuddy Coal Co. v. Couch, 274 S.W.2d 388, 390 (Ky. 1954). Therefore, "a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." Shelton, 413 S.W.3d at 909.

Turning to the facts of this case, it is clear that Defendant owed Plaintiff a duty here, as both Plaintiff and Defendant agree that Plaintiff was an invitee on Defendant's property. One of Defendant's employees spoke to Plaintiff over the intercom, opened the gate for Plaintiff, and directed her to the appropriate loading dock. (Pl.'s Dep. [DN 23-2] at 25.) Plaintiff was specifically invited onto the premises with the assumption that she would deliver mail to Defendant, meaning they both shared a mutual interest in her presence—Plaintiff had an interest in completing her task as a USPS employee and Defendant had an interest in receiving its mail. See Williams v. Goodyear Tire & Rubber Co., No. 11-2035-STA, 2012 WL 1228391, at *5 (W.D. Tenn. Apr. 11, 2012) (treating postal worker who delivered mail as an "invitee" for the purposes of premises liability). Therefore, Defendant not only owed Plaintiff "a general duty of reasonable care, but also the more specific duty associated with the landowner-invitee relationship." Shelton, 413 S.W.3d at 910.

Section 343A of the Second Restatement of Torts states that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." This Section deals with the "open and obvious doctrine." In recent decisions, the Kentucky Supreme Court has completely changed the analysis of this doctrine. A defendant's liability is no longer excused "due to a plaintiff's failure to take notice of and avoid an open and obvious danger." Ward v. JKP Investments, LLC, No. 2013-CA-001706-MR, 2015 WL 293332, at *1 (Ky. Ct. App. Jan. 23, 2015) (citing Shelton v. Kentucky Easter Seals Society, Inc., 413 S.W.3d 901 (Ky. 2013) (vacated on other grounds); Dick's Sporting Goods, Inc. v. Webb, 413 S.W.3d 891 (Ky. 2013)). The Shelton court stated:

> [A]n open-and-obvious condition does not eliminate a landowner's duty. Rather, in the event that the defendant is shielded from liability, it is because the

> defendant fulfilled its duty of care and nothing further is required. The obviousness of the condition is a "circumstance" to be factored under the standard of care. No liability is imposed when the defendant is deemed to have acted reasonably under the given circumstances.

413 S.W.3d at 911. Thus, even if the danger is open and obvious, "[t]he question is . . . whether the landowner could reasonably foresee a land entrant proceeding in the face of the danger, which goes to the question whether the universal duty of reasonable care was breached." Carter v. Bullitt Host, LLC, 471 S.W.3d 288, 297 (Ky. 2015) (discussing Shelton, 413 S.W.3d at 917–18). Taking into account Section 343A of the Second Restatement of Torts, the Shelton court stated:

> [H]arm to the invitee is reasonably foreseeable despite the obviousness of the condition "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered, or fail to protect himself against it" and, also, "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."

413 S.W.3d at 907 (quoting Restatement (Second) of Torts § 343A (1965)). Therefore, "if such events are foreseeable and the landowner has not made reasonable efforts to correct the problem which causes harm to a plaintiff, then the landowner has breached his general duty of reasonable care." Carter, 471 S.W.3d at 297.

Generally, "the question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one." Shelton, 413 S.W.3d at 916. This, however, does not necessarily preclude the possibility of summary judgment. As such, on a motion for summary judgment, "the trial court must examine the defendant's conduct, not in terms of whether it had a duty to take particular actions, but instead in terms of whether its conduct breached its duty to exercise the care required as a possessor of land." Ward, 2015 WL 293332, at *2. Therefore, "'[t]he extent of foreseeable risk' at the time

7

of the defendant's alleged negligence 'depends on the specific facts of the case,'" and "the foreseeability of the risk of harm should be a question normally left to the jury under the breach analysis" unless "no reasonable person could differ on the matter." Shelton, 413 S.W.3d at 913–14 (quoting A.W. v. Lancaster Cty. Sch. Dist. 0001, 784 N.W.2d 907, 917 (2010)).

Here, Defendant argues that this ramp was open and obvious to Plaintiff, as she traversed the ramp twice before falling, there was a protective curb, the curb was painted yellow, and the ramp was maintained in a reasonably safe condition. (Def.'s Reply [DN 27] at 11.) Therefore, Defendant argues, Defendant could not have anticipated that the dangerous condition of the ramp could cause physical harm to Plaintiff due to its open and obvious nature. (Id.) However, Plaintiff argues that Ramp #33 was dangerous because it was too narrow, it did not have a guard rail, and the "wall" on the side of the ramp, which the court assumes to mean the curb, was shorter than others on similar ramps. (Pl.'s Resp. [DN 26] at 5.) Plaintiff further argues that because the ramp constituted a dangerous condition, Defendant breached its duty of reasonable care to keep its premises in a reasonably safe condition, as it failed to eliminate the danger or warn her of it. (Id. at 4.) Plaintiff posits that Defendant could "reasonably foresee that a delivery person unloading packages at this ramp could fall due to narrowness of the space, the shorter wall and the failure to place [a] protective railing on the one side of the ramp." (Id. at 5.)

The Court believes that reasonable minds could differ on the question of foreseeability. A jury could conclude that the Defendant should have foreseen that someone might be distracted or inattentive while negotiating the narrow ramp, moving around a vehicle, and walking close to the edge of the ramp. Ramp #33 is used for the express purpose of loading and unloading items out of commercial vehicles. Because loading and unloading is typically conducted by individuals who physically move the cargo, these individuals are regularly required to traverse

the ramp near the vehicles and enter and exit those vehicles in the process. Since the ramp appears narrow and is only protected on one side by an eight inch yellow curb, it is likely foreseeable that individuals moving in and out of a vehicle could walk closely to the edge of the ramp and might have little room to move freely. Further, loading and unloading is typically done with a distinct task in mind and is usually performed in a relatively quick manner. A jury could find that the Defendant could have foreseen that a delivery person, focused on accomplishing the task of unloading cargo for Defendant, would proceed in face of the potential danger after weighing the risks. Whether a jury will so find remains to be seen, but the circumstances require this question to be left to them to decide, as reasonable minds can certainly differ on the foreseeability of danger.

The next step in the analysis is the question of whether Defendant breached its duty of care by failing to correct the foreseeable danger. Plaintiff argues that by failing to install a protective railing on the narrow ramp and only protecting ramp users with a short "wall," Defendant breached its duty to maintain its premises in a reasonably safe condition. (Pl.'s Resp. [DN 26] at 6.) Defendant responds by stating that the danger of the ramp was open and obvious to Plaintiff and it did not breach its duty because no building code or regulation required any hand rail and the yellow curb was a sufficient barrier, as it is eight inches tall and painted yellow. (Def.'s Reply [DN 27] at 11.) As discussed, even if the danger posed to Plaintiff was open and obvious, Defendant still has a duty to eliminate any *foreseeable* danger and harm that could result. Again, the Court finds that reasonable minds could differ on this question. A jury could reasonably conclude that Defendant did not take all reasonable steps in order to remedy the danger involved by simply painting the curb yellow. A jury might conclude that given the narrowness of the ramp and the height of the drop off, the installation of a railing would have

9

been a reasonable precaution, even in spite of the fact that pertinent building and safety codes do not require it. Again, whether a jury will so find remains to be seen, but since material facts still exist and because a reasonable jury could find that Defendant breached its duty of care, Defendant's Motion for Summary Judgment is denied. Therefore, a jury will be tasked with deciding these questions of fact and properly apportioning fault to the parties.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

					 **Joseph H. McKinley, Jr., Chief Judge**
					 **United States District Court**

January 12, 2016

cc: counsel of record